IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | 4:19CV3035 |
| v. | ) ) | |
| AMERITAS LIFE INSURANCE CORP., AMERITAS INVESTMENT CORP., UNION CENTRAL LIFE INSURANCE COMPANY, and AMERITAS HOLDING COMPANY, | ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

Three separate lawsuits provide the context for understanding this dispute:

(1) This declaratory judgment action, filed on April 16, 2019, requesting this court to declare that Plaintiff's bond does not cover Defendants' litigation and settlement costs in third-party litigation;

(2) A lawsuit filed by most of the above-captioned Defendants against the above-captioned Plaintiff and two other insurers in Ohio on June 10, 2019, requesting declaratory and monetary relief for the insurers' refusal to cover litigation and settlement costs in the same third-party litigation involved in Lawsuit (1); and

(3) A 2016 lawsuit brought by the above-captioned Ameritas Defendants against the above-captioned Plaintiff in which Judge Gerrard of this court construed the same bond language at issue in Lawsuits (1) and (2). *Ameritas Life Ins. Corp. v. Federal Ins. Co.*, Case No. 4:16CV3006, Filing 108 at

CM/ECF p. 10 (D. Neb. Oct. 25, 2017) ("*Ameritas I*").

## I. BACKGROUND

Plaintiff Federal Insurance Company ("Federal") filed this action against the Defendants ("Ameritas") on April 16, 2019, seeking a declaratory judgment that a financial institution bond Federal issued to Ameritas does not cover amounts Ameritas incurred to defend and settle a third-party liability arising from the Ponzi scheme executed by one of Ameritas's former general agents, Dee Allen Randall ("Randall"). Pending before the court is Ameritas's Motion to Dismiss, or in the Alternative, Stay This Action, which asks this court to either (1) exercise its "discretionary authority" under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a),[1] to decline to exercise jurisdiction over this action, or (2) stay this action pending resolution of "the more complete, all-encompassing action filed by the primary Defendants—who are the natural plaintiffs in this insurance dispute—in state court in Ohio." (Filing 11.)

The Ohio lawsuit Ameritas references in its Motion was filed by Ameritas against Federal and two of its other insurers—Twin City Fire Insurance Company ("Twin City") and Arch Insurance Company ("Arch")—for denying coverage for the millions of dollars it paid to litigate and settle various lawsuits stemming from former agent Randall's Ponzi scheme. That action was filed in Ohio state court on

---

[1]Section 2201(a) of Title 28 of the United States Code provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

June 10, 2019, and was removed to the United States District Court for the Southern District of Ohio on July 12, 2019. (Filing 28, Ex. 3.)

In support of its Motion to Dismiss or Stay, Ameritas argues that while it and Federal were corresponding by letter and telephone about Federal's refusal to cover Ameritas's loss, Federal suddenly, and without prior notice to Ameritas, filed a "preemptive" declaratory judgment action in this court in an attempt to benefit from Judge Gerrard's decision in *Ameritas I*. That decision held that Federal did not breach the parties' agreement when it denied coverage under a bond it issued to Ameritas in which Federal agreed to indemnify Ameritas for "[l]oss resulting directly from dishonest acts . . . of any Employee," which is the same language at issue in the case now before the court. *Ameritas Life Ins. Corp. v. Federal Ins. Co.*, Case No. 4:16CV3006, Filing 108 (D. Neb. Oct. 25, 2017).[2] Ameritas counters that the issues in Federal's declaratory judgment action should be resolved as part of the later-filed Ohio case because "the Ohio Lawsuit is a complete, comprehensive action, brought by the 'natural plaintiffs'—the Ameritas Parties—and involving all parties necessary to resolving this coverage dispute and obtaining complete relief." (Filing 12 at CM/ECF pp. 8-9.)

In response to Ameritas's Motion to Dismiss or Stay, Federal has filed a

---

[2]In *Ameritas I*, the issue was whether Federal should have covered Ameritas's reimbursement to its customers who were victims of an employee-agent's scheme to convince them to voluntarily transfer funds from their Ameritas investment or personal banking accounts to the employee-agent's own company. The agent falsely informed the customers that their money would be reinvested in other non-Ameritas investment products, but the agent instead pocketed the money. The issue was whether Federal should have covered the amount of money Ameritas paid to settle with the victims of the scheme under bond language that provided coverage for "[l]oss resulting directly from dishonest acts . . . of any Employee[.]" Judge Gerrard held that "losses resulting from third party tort claims are necessarily *indirect*, and thus precluded under the terms of the bond." *Ameritas Life Ins. Corp. v. Federal Ins. Co.*, Case No. 4:16CV3006, Filing 108 at CM/ECF p. 10 (D. Neb. Oct. 25, 2017).

3

Cross Motion to Enjoin Ameritas's Second Filed Action in Ohio (Filing 26), which urges this court to enjoin Ameritas from pursuing the action now pending in the United States District Court for the Southern District of Ohio. Federal argues that Ameritas engaged in "obvious forum shopping" because it filed a "reactive action in Ohio . . . in hopes that an Ohio court will ignore Nebraska precedent and Judge Gerrard's decision, and grant it a second bite at the apple." (Filing 26 at CM/ECF p. 2; Filing 35 at CM/ECF p. 2.) Federal encourages this court to apply the "first-to-file" rule, which provides that "where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985).

## II. FACTS RELEVANT TO PARTIES' ARGUMENTS

### A. The Accused Former General Agent

The former general agent at the root of the Nebraska and Ohio lawsuits is Dee Allen Randall, who sold life insurance products in Utah and served as a general agent for Defendant Union Central Life Insurance Company ("Union") from 2000 to 2011 when Union was operating out of Ohio. (Filing 1 ¶ 19.) Randall ran a Ponzi scheme in which money from new investors was used to pay earlier investors to make it appear that his businesses were profitable. Randall was alleged to have taken approximately $65 million from 700 investors. (Filing 1 ¶ 20.) Union terminated Randall as an agent effective October 12, 2011, which is the date Randall's companies entered into Chapter 11 bankruptcy.

### B. Union Central Life Insurance Company

According to the allegations in the Ohio lawsuit, until Union merged into Defendant Ameritas Life Insurance Corporation in July 2014, Union was an Ohio

corporation with its principal place of business in Ohio. Since the merger, Union has continued operating its business out of the same Ohio offices. (Filing 28, Ex. 3 ¶¶ 7, 9; *see also* Filing 28-2 at CM/ECF pp. 13-14, 19.) However, evidence filed in the case now before this court establishes that Union transferred its domicile from Ohio to Nebraska effective April 22, 2009. (Filing 28-2 at CM/ECF p. 7 (order from Nebraska Department of Insurance approving Union's application to transfer domicile from Ohio to Nebraska); Filing 28-2 at CM/ECF p. 3 (order of Ohio Department of Insurance approving Union's redomestication from Ohio to Nebraska on April 16, 2009).) As part of the redomestication, Union's principal place of business, resident agent, and registered office were declared to be in Lincoln, Nebraska. (Filing 28-2 at CM/ECF p. 15 (Union's Amended and Restated Articles of Incorporation dated April 6, 2009).)

## C. The Ohio Lawsuit

Ameritas filed the Ohio lawsuit against Federal, Twin City, and Arch in Ohio state court on June 10, 2019, (Filing 28, Ex. 3), but defendant Arch, with the consent of Federal and Twin City, removed it to the United States District Court for the Southern District of Ohio. (Filing 28, Ex. 6.) The suit seeks a declaratory judgment and damages for breach of contract against all three insurers for the insurance companies' "wrongful refusal to cover more than $24 million in insurable loss and defense costs incurred by Plaintiffs in connection with a Ponzi scheme perpetrated by a former general insurance agent [Dee Allen Randall] and its sub-agents." (Filing 26, Ex. 6 ¶ 1.) As to Federal, Ameritas asserts that the bond obligated Federal to reimburse Ameritas for $14.7 million in settlement payments it made to resolve lawsuits resulting from Randall's Ponzi scheme─the same claim made in the declaratory judgment action now before this court. (Filing 28, Ex. 3.)

## D. The Bond at Issue in Both Nebraska and Ohio Lawsuits

In December 2013, Ameritas purchased from Federal a fidelity bond covering the period of 1/1/2014 to 1/1/2015. The parts of the bond challenged in this court provide as follows: "[Federal] . . . agrees to pay [Ameritas] for . . . Loss resulting directly from dishonest acts of any General Agent . . . provided, however, [Ameritas] shall first establish that the loss was directly caused by dishonest acts of any General Agent, which result in improper personal financial gain to such General Agent and which acts were committed with the intent to cause [Ameritas] to sustain such loss." (Filing 1-2 at CM/ECF p. 4 (Insuring Clause 1(C) (bold omitted)).) The bond excludes, among other things, coverage for "damages of any type for which [Ameritas] is legally liable, except compensatory damages, but not multiples thereof, arising from a loss covered under this Bond"; "any costs, fees and expenses incurred by [Ameritas] . . . as a party to any legal proceeding, even if such legal proceeding results in a loss covered by this Bond"; and loss resulting from a general agent's violation of any law regulating securities transactions, investment companies and advisors, and insurance companies. (Filing 1-2 at CM/ECF p. 16 (Conditions and Limitations Clauses 2(e), 2(f), 2(i)).)

In the Ohio action, Insuring Clause 1(C) is also challenged, along with Insuring Clauses 2 (loss of property resulting from acts while on Ameritas property), 4 (loss resulting from forgery), and 7 (loss resulting directly from fraudulent data entries or changes within computer system that cause fund transfer). (Filing 28-3 at CM/ECF ¶¶ 43, 65, 69, 70, Prayer for Relief ¶ (a).)

### E. Parties' Correspondence Regarding Coverage Under Bond

After the underlying lawsuits stemming from Randall's Ponzi scheme were resolved, Ameritas wrote Federal on December 19, 2018, asking if Federal "is now prepared to discuss settlement" regarding Ameritas/Union Central's "direct losses" incurred in litigating and settling the lawsuits. In that letter, Ameritas stated that it "would prefer to resolve this dispute without litigation" and asked that Federal

6

respond by January 4, 2019, if it was "prepared to enter into negotiations in an effort to avoid litigation." (Filing 28-1.)

While there is no supporting evidence to this effect, the parties agree in their briefing that Ameritas provided Federal with information regarding Ameritas's claim for coverage under the bond; Federal spent four months reviewing such information (presumably from December 2018 when Ameritas offered to discuss settlement to April 2019 when Federal filed suit); Federal and Ameritas discussed Ameritas's claim over the telephone; and instead of settling the claim, Federal elected to file a declaratory judgment action in this court without prior notice to Ameritas. (Filing 12 at CM/ECF p. 8 (Ameritas Brief); Filing 27 at CM/ECF p. 15 n.17 (Federal Brief).)

The sudden and undisclosed nature of Federal's declaratory judgment action in this court is evidenced by Federal's letter to Ameritas dated April 16, 2019—the same day the declaratory-judgment action in this court was filed—explaining that Federal had filed the action in this court because the same bond language at issue had previously been interpreted in *Ameritas I* to exclude coverage, so "a declaratory judgment action in the same court . . . will provide an efficient forum to resolve this claim." (Filing 28-4.) Federal explained that its position was the same as Judge Gerrard's prior decision in *Ameritas I* that the bond language at issue did not cover amounts incurred to settle liability to a third party. Specifically:

> This insuring clause provides first-party coverage for a loss to Ameritas resulting directly from the dishonest acts of Randall. In this instance, Randall's alleged dishonesty did not result directly in a loss to Ameritas in that Randall did not embezzle money from Ameritas or fraudulently induce Ameritas to invest in his alleged Ponzi scheme. Instead, Randall allegedly defrauded a series of third parties, each of whom initially suffered the loss and then sought to recover from Ameritas.

7

(Filing 28-4 at CM/ECF p. 3 (Apr. 16, 2019, Letter from Federal to Ameritas).)

### III.  DISCUSSION

The general rule that federal district courts must exercise their jurisdiction over claims unless there are "exceptional circumstances for not doing so . . . . yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the Declaratory Judgment Act," as does the Complaint here. *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (internal quotation marks and citations omitted). The Act's language providing that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (emphasis added), is a "textual commitment to discretion" that "distinguish[es] the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

In addition to the discretion granted by the Declaratory Judgment Act, also impacting this case is the principle that when two federal courts have concurrent jurisdiction over a complaint involving the same parties and issues, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). While this priority has often been called the "first-to-file rule," the Eighth Circuit Court of Appeals has stated that "'first filed' is not a 'rule,'" but instead a "factor that typically determines, in the absence of compelling circumstances, which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) (internal quotation marks and citation omitted); *see also Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) ("The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." (internal quotation marks and citation omitted)).

Such "compelling circumstances" include: (1) the first-filer was on notice that the opposing party was "at least considering filing suit" against the first-filer, such "lawsuit was imminent," and the opposing party was doing "more than blowing smoke about a potential lawsuit"; and (2) the first-filer's action seeks a declaratory judgment, which "may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Nw. Airlines, Inc.*, 989 F.2d at 1007.

As to the first "compelling circumstance," Federal had notice of Ameritas's intent to file suit for coverage under the bond by virtue of Ameritas's letter to Federal on December 19, 2018, asking if Federal "is now prepared to discuss settlement" regarding Ameritas/Union Central's losses. In that letter, Ameritas stated that it "would prefer to resolve this dispute without litigation" and asked that Federal respond by January 4, 2019, if it was "prepared to enter into negotiations in an effort to avoid litigation"—in other words, if Federal did not indicate its willingness to enter into settlement negotiations, Ameritas would bring suit. (Filing 28-1.) *See Nebraska Inv. Fin. Auth. v. Gen. Elec. Capital Corp.*, No. 4:14-CV-3242, 2016 WL 8376457, at *4 (D. Neb. Jan. 21, 2016) (while defendant's letter to plaintiff preceding declaratory judgment action did not specifically use the word "lawsuit," "it is evident to the Court that the letter was intended to ascertain whether the plaintiff was willing to resolve the dispute outside of court, the clear implication being that if settlement was impossible, the defendants would file suit").

The second compelling circumstance is also present here because Federal seeks only declaratory relief in its suit in this court, while Ameritas—the "true plaintiff"—seeks enforcement of contracts through declaratory and monetary relief in Ohio federal court. *Nebraska Inv. Fin. Auth.*, 2016 WL 8376457, at *5 (defendants in first-filed declaratory judgment action were "natural plaintiffs" because while both parties sought declaratory relief in both federal venues with regard to interpretation of agreements, only defendants in first-filed declaratory judgment action "alleged that they have *already* incurred an injury"—that is,

9

defendants claimed right to reimbursement of money already paid, and plaintiff only sought declaration that it was not liable to reimburse defendant for such payments); *SimplyWell, LLC v. Elgo, Inc.*, No. 8:09CV192, 2009 WL 10675760, at *4 (D. Neb. Dec. 28, 2009) (nature of declaratory judgment action constituted compelling circumstance for refusing to apply first-filed rule when suit sought declaration that plaintiff's activity did not violate the law; declaratory judgment would not alleviate actual or imminent threat to plaintiff, but would only help plaintiff "avoid litigation in a foreign state").

In addition to these "compelling circumstances," other factors suggest that Federal's filing of its declaratory judgment action in this court was preemptive, so the first-to-file factor should not weigh in favor of allowing the case to proceed in this court. Federal spent four months studying documents and speaking with Ameritas over the telephone about Ameritas's claim, then abruptly filed its action in this court without giving Ameritas notice that it was rejecting the idea of settlement and choosing to litigate. As stated in *Schwendiman Partners, LLC v. Hurt*, 71 F. Supp. 2d 983, 988 (D. Neb. 1999):

> As a matter of public policy, potential plaintiffs should be encouraged to settle their claims out of court without fear that they will lose the opportunity to pick their forum should the negotiations fail. The Court should encourage good faith settlement negotiations rather than rushing to the courthouse, and application of the first-filed rule should not penalize parties for their efforts to settle matters out of court.

*Id*. (internal quotation marks and citations omitted).

As a practical matter, the Ohio lawsuit is the only "complete" action because it encompasses Ameritas's affirmative claims for money damages for its insurers' breaches of their insurance policies; Ameritas's claims for declaratory relief; and all parties necessary for complete relief, including all three defendant insurers. In short, the Ohio lawsuit involves a more complete set of facts, parties, and claims, and

entirely incorporates the action for declaratory judgment now pending in this court. Further, there is no indication that proceeding in Ohio would pose an undue burden to Federal. *Nw. Airlines, Inc.*, 989 F.2d at 1007 (in deciding whether district court properly applied "first-to-file rule," court considered whether first-filer "had . . . acted in bad faith []or raced to the courthouse to preempt a suit" filed in another venue, whether same claims were asserted in both cases, which venue would be more convenient for witnesses, and whether proceeding in particular venue would pose undue burden).

## IV.   CONCLUSION

The facts and circumstances of this case support the decision to decline exercising jurisdiction over this declaratory judgment action. The lawsuits in this court and in the Southern District of Ohio both involve Federal, Ameritas entities, and the same ultimate controversy as between these two parties—that is, Ameritas's entitlement to reimbursement for litigation and settlement costs related to the Randall Ponzi scheme under the Federal bond. Having thoroughly considered the circumstances of these cases and the relief sought by each party, the court finds that allowing the action for damages and declaratory relief pending in the United States District Court for the Southern District of Ohio to proceed and dismissing the declaratory judgment action in this court better serves the needs of the parties by providing the most comprehensive solution to the entire controversy. Consequently, the court will decline to exercise jurisdiction over Federal's action for declaratory relief and will dismiss Federal's Complaint.

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing 11) is granted, and Defendants' alternative Motion to Stay This Action (Filing 11) is denied;

2. Plaintiff's Cross Motion to Enjoin Ameritas's Second Filed Action in Ohio (Filing 26) is denied;

3. This case is dismissed without prejudice; and

4. Judgment shall be entered by separate document.

DATED this 21st day of October, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge